# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA, INC.,  )
                                                 )
               Plaintiffs,         )
                                                   )

v.                                               )           C.A. No. 06-509-JJF
                                                      )

QUALCOMM INCORPORATED,             )
                                                      )
               Defendant.        )

## PLAINTIFFS NOKIA CORPORATION AND NOKIA INC.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO REMAND

OF COUNSEL:

A. William Urquhart
Frederick Lorig
Patrick Shields
Erica Taggart
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
865 South Figueroa Street
Los Angeles, CA 90017
(213) 443-3000

Richard I. Werder, Jr.
Sanford I. Weisburst
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Dated:  August 25, 2006

Thomas A. Beck (#2086)
beck@rlf.com
Lisa A. Schmidt (#3019)
schmidt@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiffs Nokia Corporation
and Nokia, Inc.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    NO FEDERAL QUESTION IS RAISED BY THE PARTIES'
      DISAGREEMENT OVER THE LEGAL EFFECT, UNDER
      FRENCH   CONTRACT   LAW,   OF   QUALCOMM'S
      DECLARATIONS ......................................................................................................... 2

      A.    Nokia's Complaint Is Based On Qualcomm's Declarations Of
            Essentiality, Not On Any Claim Of Actual Essentiality. ................................... 2

      B.    Qualcomm's Hypothetical Defense That Some Declared Essential
            Patents May Not Be Essential Does Not Create Federal Subject Matter
            Jurisdiction. ....................................................................................................... 5

CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987)...................................................................................................................5

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988)...................................................................................................................5

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
545 U.S. 308 (2005) ..................................................................................................................7

*Gully v. First Nat. Bank,*
299 U.S. 109 (1936)...................................................................................................................7

*Highland Supply Co. v. Klerk's Flexible Packaging, B.V.,*
2005 U.S. Dist. LEXIS 38013 (S.D. Ill. Dec. 21, 2005)..........................................................7

*Shapiro v. Middlesex Co. Municipal Joint Ins. Fund,*
930 F. Supp. 1028 (D.N.J. 1996)..............................................................................................3

*U.S. Valves, Inc. v. Dray,*
212 F.3d 1368 (Fed. Cir. 2000).................................................................................................7

## STATUTES

28 U.S.C. § 1441 ......................................................................................................................5

## INTRODUCTION

This case should be promptly remanded to the Court of Chancery because Nokia's well-pleaded Complaint states claims based on a straightforward breach of contract and presents no federal question.

Qualcomm's removal rests exclusively on the premise that the relief sought in Nokia's Complaint requires a determination that Qualcomm U.S. patents are infringed. But the Complaint identifies no specific domestic or foreign patents and does not ask or require that either infringement or validity of any patent be determined. Even a cursory review of the Complaint shows that Qualcomm's premise is plainly wrong, and the cases on which Qualcomm relies -- in which state-law breach of contract claims turned on whether particular products were "covered" by particular patents -- are not on point. Qualcomm apparently wishes to argue defensively in its answer -- despite its written admissions in declarations to a French standard-setting organization, ETSI -- that some or all of its declared-essential patents are not in fact essential. And that the burden should be on Nokia to identify and prove specific U.S. patents are infringed before the Chancery Court can interpret Qualcomm's contractual obligations for all foreign and domestic patents Qualcomm has declared essential to ETSI. But it is beyond dispute that federal jurisdiction cannot arise from a defendant's answer and, even if it could, Qualcomm's arguments about essentiality would provide no defense to Nokia's claims in this action.

"Essentiality in fact" is not an element, much less a necessary one, of Nokia's contract claims. Those contract claims allege that Qualcomm's *declarations* of essentiality and accompanying FRAND commitment create a binding contract under French law, granting a license to ETSI members and waiving the right to injunction, *without regard to whether the*

*patents are in fact essential.* Whether Nokia is correct that such declarations give rise to binding contractual obligations is a matter of French contract law, not U.S. patent infringement law. The Qualcomm declarations cover European and other foreign patents, not just U.S. patents, and the accuracy of Qualcomm's declarations of essentiality as to either is not alleged in the Complaint. In sum, no U.S. patent was identified and the infringement of no U.S. patent will have to be determined to provide Nokia with the relief sought in the Complaint.[1]

**ARGUMENT**

**I.    NO FEDERAL QUESTION IS RAISED BY THE PARTIES' DISAGREEMENT OVER THE LEGAL EFFECT, UNDER FRENCH CONTRACT LAW, OF QUALCOMM'S DECLARATIONS.**

    **A.    Nokia's Complaint Is Based On Qualcomm's Declarations Of Essentiality, Not On Any Claim Of Actual Essentiality.**

Qualcomm has failed to carry its burden to demonstrate that this Court has subject matter jurisdiction over this contract dispute. Notwithstanding Qualcomm's efforts to recast Nokia's straightforward contract action as a patent infringement case, Nokia's Complaint speaks for itself. Nokia is seeking declaratory and injunctive relief with respect to those patents that

---

[1] Similarly unfounded are Qualcomm's arguments about forum shopping. Qualcomm has engaged in a worldwide patent litigation campaign that includes actions commenced in the United States, United Kingdom, France, Germany and the International Trade Commission. Qualcomm also recently presented its claim that Nokia had engaged in forum shopping to the judge presiding over Qualcomm's San Diego action in connection with Qualcomm's application to lift the stay of that action. The judge not only refused to lift the stay, but also acknowledged the efficiency benefits of proceeding in the Chancery Court, observing during a status conference that "if the Delaware Court is going to determine what that contract means, it sounds like there is a potential for the Delaware Court to resolve all of these other European lawsuits." (Aug. 15, 2006 Tr. at 28, attached as Ex. A). Furthermore, Nokia contends that Qualcomm is barred from proceeding with any of its pending patent actions because of certain arbitrable defenses that are completely independent of Nokia's claims here. Nokia should not be required to waive its other defenses, and allow the multitude of infringement actions to proceed, just so that it can assert in those fora contract claims that the Chancery Court can resolve more expeditiously.

Qualcomm has declared are "essential" to ETSI and its members, and which Qualcomm has thereby contractually committed to license on FRAND terms.

Qualcomm seeks to portray this action as something it is not -- an infringement action that hinges on a determination of whether "it is not possible on technical … grounds … to make, sell, lease … EQUIPMENT or METHODS which comply with a STANDARD without infringing [Qualcomm's patents]." No such issue is presented by Nokia's Complaint. To the contrary, Nokia seeks relief only with respect to those patents self-declared by Qualcomm as "essential." Whether Qualcomm's declarations give rise to the obligations Nokia asserts is a pure question of French contract law that does not give rise to federal subject matter jurisdiction.

Despite the omission of any reference to any specific U.S. patent in the Complaint, Qualcomm argues that Nokia's Complaint asked the Chancery Court to determine which U.S. patents that Qualcomm has declared essential to ETSI standards are, in fact, essential or infringed. *See* Opposition at 8 (selectively quoting from Complaint), 12 (accusing Nokia of "pretending that the relevant QUALCOMM commitments apply to declared patents, rather than essential patents …").[2] To determine whether an unidentified declared-essential U.S. patent is actually "essential," Qualcomm argues that the Chancery Court will have to decide whether it is possible to use technology consistent with ETSI Standards without infringing the unidentified U.S. patent. *Id.* at 11-12.

---

[2] Qualcomm even goes so far as to state: "Tellingly, plaintiffs avoid reciting *in their brief* the terms of the [ETSI] policy …" Opposition at 6 (emphasis added). Yet all of the policy provisions Qualcomm focuses on are quoted in Nokia's Complaint. *See* Op. Brf. Ex. B at ¶¶ 22-24. Despite Qualcomm's suggestion to the contrary (*see* Opposition at 13), no "artful pleading" has occurred here. *Cf. Shapiro v. Middlesex Co. Municipal Joint Ins. Fund*, 930 F. Supp. 1028, 1032 (D.N.J. 1996) ("To establish artful pleading, the removing party must demonstrate the Federal issue is necessary to the action.").

But Nokia's Complaint asks for nothing of the kind. In fact, Nokia's Complaint makes perfectly clear that Nokia's claim is based on Qualcomm's contractual commitment to license all worldwide patents that Qualcomm has *declared* essential to ETSI on fair, reasonable and non-discriminatory terms, free of the threat of an injunction. The contract arises from Qualcomm's voluntary declarations to a standard-setting organization, not from any determination by a court of what is or is not essential:

> Nokia seeks a declaratory judgment that Qualcomm is not entitled to injunctive or exclusionary relief for any alleged infringement of any GSM or UMTS patents that Qualcomm has *declared* essential and agreed to license on FRAND terms.

*See* Op. Br. Ex. B at ¶ 54 (emphasis added); *see also, e.g., id.* at ¶ 2 ("Nokia seeks a judicial declaration establishing that Qualcomm's FRAND commitments constitute binding and enforceable contractual obligations licensing its declared-essential patents on FRAND terms ..."); ¶ 30 ("Under French law, Qualcomm's agreement to license its declared-essential GSM and UMTS patents on FRAND terms is a binding and enforceable contract ..."); ¶ 58 ("Pursuant to its contracts with ETSI, Qualcomm has agreed to license on FRAND terms any patents that Qualcomm has declared are essential to the GSM or UMTS standards."). Nokia's prayer for relief similarly makes clear that a determination of what is "essential" is not a necessary part of Nokia's claim; the relief Nokia seeks flows solely from Qualcomm's own declarations. *See id.* at ¶ A (seeking a declaration that Qualcomm has waived the right to seek an injunction "to prevent Nokia from using technology encompassed by any patents which Qualcomm has declared essential..."); ¶ B ("Permanently enjoin Qualcomm worldwide from seeking injunctive relief related to patents Qualcomm has declared essential..."); ¶ E ("Order that Qualcomm specifically perform ... [its contractual obligations] for any patents Qualcomm has declared essential to UMTS ..."). Because no determination of essentiality is necessary to

-4-

the relief sought in the Complaint, the Complaint does not require the Chancery Court to interpret any patents. Nokia's claim that Qualcomm's declarations create binding obligations is a pure issue of French contract law.

Qualcomm's apparent disagreement with Nokia regarding the effect of Qualcomm's declarations under French law only proves Nokia's point -- that this is simply a contract formation and interpretation dispute. If the Chancery Court agrees with Qualcomm that contractual obligations only attach with respect to those patents which Qualcomm has declared essential *and* which are in fact essential, Qualcomm will remain free to argue in its various patent infringement lawsuits that any particular patent is non-essential and therefore is not subject to a FRAND licensing obligation. In no event, however, will the Chancery Court be called upon to determine any patent infringement issues.

B.    **Qualcomm's Hypothetical Defense That Some Declared Essential Patents May Not Be Essential Does Not Create Federal Subject Matter Jurisdiction.**

Qualcomm's argument that FRAND applies only to patents that are actually essential raises, at most, a hypothetical affirmative defense to Nokia's contract claims. Even if a federal question could be found embedded in this hypothetical defense by ignoring the allegations of the Complaint, this cannot create federal jurisdiction. As Qualcomm concedes, it is well-established law that federal questions are determined from the face of the plaintiff's Complaint, unaided by anything that the defendant might allege in defense. *See, e.g., Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988); *see also Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393 (1987) (interpreting 28 U.S.C. § 1441 and reasoning "it is now settled law that a case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's Complaint"). Should Qualcomm choose to raise non-essentiality as

a defense, Qualcomm would either have to rebut its own prior declarations,[3] or prove that some subsequent change in circumstances has made previously essential technology non-essential. The Complaint plainly does not introduce these issues or require their resolution; that Qualcomm may wish to raise them in defense is irrelevant to federal question jurisdiction.

Furthermore, Qualcomm has failed to show that there is any actual dispute in this case regarding essentiality, even as a defense. Nokia's Complaint neither agrees that Qualcomm's patents are actually essential nor disputes that claim. Actual essentiality is irrelevant because Nokia's claims arise from the fact that Qualcomm itself has *declared* them essential. Qualcomm has never recanted any of those declarations. Qualcomm does not argue anywhere that any of its essential patent declarations was false, or that any of its formerly essential patents are no longer essential. To the contrary, Qualcomm has recently reaffirmed its claims of essentiality.[4] Qualcomm's entire argument about essentiality is thus completely hypothetical. In the absence of an actual controversy in this case, such hypothetical claims cannot support federal subject

---

[3] Because ETSI members, including Nokia, have relied on Qualcomm's declarations in adopting various standards and developing their own products, Qualcomm would likely be estopped from disputing its own prior declarations anyway.

[4] In its currently pending U.K. patent infringement suit against Nokia, Qualcomm explicitly seeks a declaration that one of its patents is essential to the GPRS standard. More broadly, a recent Qualcomm pleading in the European Commission claims that "Qualcomm's CDMA technology is like the chassis and engine of a car, while other patents rendered 'essential' to [UMTS] through the standardization process, represent embellishments, such as reclining seats, tinted glass windows and accessories. Without the chassis and engine, a car simply will not work, regardless of the quality and beauty of the body work, seating, or lights (or luggage rack, for that matter." Qualcomm EC Reply ¶ 4.12. (As noted in Nokia's Complaint, the European Commission investigation concerns whether Qualcomm's conduct violates Articles 81 and 82 of the European Community Treaty, which impose by law the same or similar requirements as Qualcomm's contractual FRAND commitment.)    Thus, not only does Qualcomm presently contend that its declared-essential patents are in fact essential to UMTS, it asserts that its patents are *more* essential than those of other companies.

matter jurisdiction. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ("[F]ederal jurisdiction demands ... a contested federal issue ...."); *Gully v. First Nat. Bank*, 299 U.S. 109, 113 (1936) ("A genuine and present controversy, not merely a possible or conjectural one, must exist ....").

None of the cases Qualcomm cites alter the conclusion that this dispute does not involve a federal question. Qualcomm (at Opposition pp. 10-11) relies heavily on *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) and *Highland Supply Co. v. Klerk's Flexible Packaging, B.V.*, 2005 U.S. Dist. LEXIS 38013, at *5 (S.D. Ill. Dec. 21, 2005), which both involved allegations that the defendants breached contracts by manufacturing or selling specific products covered by specific patents. *See id.* at *4 (contract imposed restrictions in connection with "products covered by the LICENSED PATENT."); *Dray*, 212 F.3d at 1370 (contract imposed restrictions with respect to "the invention disclosed by the [patent] applications referred to in Recital A and in patents which issues there from [*sic*]."). The court in each case correctly found that a resolution of these claims would necessarily require the court to determine whether particular products were covered by particular patents, which were patent infringement issues. *Id.* at 1372; *Highland Supply Co.*, 2005 U.S. Dist LEXIS 38013, at *13.[5] In contrast, it is plain from the Complaint that Nokia's claims here do not require the Chancery Court to determine whether any specific Nokia product infringes any specific Qualcomm patent. They require only

---

[5] *Dray* is also inapposite because it involved Federal Circuit *appellate* jurisdiction; jurisdiction in the district court was based on diversity of citizenship. *See* 212 F.3d at 1371.

that the Chancery Court determine the legal effect, under French contract law, of Qualcomm's ETSI declarations.[6]

## CONCLUSION

Faced with the prospect of litigating its contractual obligations, Qualcomm removed the case to this Court, which it then hopes to transfer to the U.S. District Court in San Diego where the litigation is stayed. Absent the prompt merits determination Nokia seeks in the Court of Chancery, Qualcomm will continue to seek preliminary injunctive relief against Nokia in foreign jurisdictions that grant such relief with little or no process.

Aside from the obvious prejudice that will befall Nokia if Qualcomm succeeds in delaying a determination of the parties' contractual obligations, the judge presiding over Qualcomm's San Diego action explicitly recognized the efficiency benefits of proceeding in Delaware. After the Delaware action was filed, Qualcomm sought to have Judge Brewster lift the stay in favor of arbitration entered in the San Diego action. At a hearing on August 15, 2006, Judge Brewster denied Qualcomm's motion and observed: "It sounds like the Delaware Court might be resolving a lot of these European lawsuit issues which I guess, if I understand what you're telling me, are really contract cases …. And so if the Delaware Court is going to determine what that contract means, it sounds like there is a potential for the Delaware Court to

---

[6] In a footnote, Qualcomm cites authority standing for the proposition that the Chancery Court, as a state court, cannot enjoin Qualcomm from initiating litigation in a federal court. *See* Opposition at 4, n.4. This argument is irrelevant to federal subject matter jurisdiction. It also ignores the following key points: (i) while the Chancery Court cannot prevent Qualcomm from filing suit in federal court, it can enjoin Qualcomm from seeking a remedy (injunction) that it is contractually barred; (ii) the Chancery Court has power to enjoin Qualcomm from initiating proceedings in Europe or in the courts of any other state or nation; and (iii) a declaratory judgment by the Chancery Court that Qualcomm is contractually barred from pursuing an injunction would have issue preclusive effect in other proceedings, including proceedings in federal court.

resolve all of these other European lawsuits." (Aug. 15, 2006 Tr. at 28, attached as Ex. A).
Despite these remarks, the next day Qualcomm filed its Notice of Removal and a Motion to
Transfer this case for consolidation with the San Diego action.

Qualcomm has failed to carry its burden to demonstrate that this Court has subject matter
jurisdiction over this contract dispute. Notwithstanding Qualcomm's efforts to recast Nokia's
straightforward contract action as a patent infringement case, Nokia's Complaint speaks for
itself. Nokia is seeking declaratory and injunctive relief with respect to those patents that
Qualcomm has declared are "essential" to ETSI and its members, and which Qualcomm has
thereby contractually committed to license on FRAND terms.

For the foregoing reasons, Nokia respectfully requests that this Court grant its Motion to
Remand and remand this action to the Court of Chancery so it can be promptly adjudicated on
the merits.

OF COUNSEL:
A. William Urquhart
Frederick Lorig
Patrick Shields
Erica Taggart
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
865 South Figueroa Street
Los Angeles, CA 90017
(213) 443-3000

Richard I. Werder, Jr.
Sanford I. Weisburst
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Dated: August 25, 2006

Thomas A. Beck (#2086)
beck@rlf.com
Lisa A. Schmidt (#3019)
schmidt@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19899
(302) 651-7700
Attorneys for Plaintiffs Nokia Corporation and
Nokia, Inc.

-9-

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2006, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and by hand

delivery to the following:

      Matthew E. Fischer, Esquire
      Potter Anderson & Corroon LLP
      1313 North Market Street
      P.O. Box 951
      Wilmington, Delaware  19899

                Steven J. Fineman (#4025)

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

QUALCOMM, INC.,                    )    Case No. 05CV2063-B(BLM)
                                   )
          Plaintiff,               )    San Diego, California
                                   )
vs.                                )    Tuesday,
                                   )    August 15, 2006
NOKIA CORPORATION,                 )    10:30 a.m.
                                   )
          Defendant.               )
                                   )

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE RUDI M. BREWSTER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          JAMES BATCHELDER, ESQ.
                            CRAIG H. CASEBEER, ESQ.
                            Day Casebeer Madrid &
                              Batchelder, LLP
                            20300 Stevens Creek Boulevard
                            Suite 400
                            Cupertino, California 95014
                            (408) 873-0110

                            DAVID DOLKAS, ESQ.
                            McDermott, Will & Emery
                            3150 Porter Drive
                            Palo Alto, California 94304
                            (650) 813-5000

For the Defendant:          S. GARDNER CULPEPPER III, ESQ.
                            PATRICK J. FLINN, ESQ.
                            Alston & Bird LLP
                            One Atlantic Center
                            1201 West Peachtree Street
                            Atlanta, Georgia 30309
                            (404) 881-7000

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:   (Cont'd.)

For the Defendant:          MICHAEL I. NEIL, ESQ.
                           Neil, Dymott, Frank, Harrison
                             & McFall
                           1010 Second Avenue, Suite 2500
                           San Diego, California 92101
                           (619) 238-1712

Transcript Ordered by:     CRAIG H. CASEBEER, ESQ.

Court Recorder:            Jennie Hinkle
                           United States District Court
                           940 Front Street
                           San Diego, California  92101

Transcriber:               Jordan Keilty
                           Echo Reporting, Inc.
                           6336 Greenwich Drive, Suite B
                           San Diego, California 92122
                           (858) 453-7590

1  SAN DIEGO, CALIFORNIA  TUESDAY, AUGUST 15, 2006 10:30 A.M.

2                        --oOo--

3    (Call to order of the Court.)

4         OPERATOR:  Thank you for holding for Mr.

5  Casebeer's conference call.  We're ready to begin.  Mr.

6  Casebeer, would you like a roll call of your participants?

7         MR. CASEBEER (Telephonic):  Yes, please.

8         OPERATOR:  Okay.  Please respond when I call your

9  name.  I have Craig Casebeer.

10         MR. CASEBEER:  Yes.

11         OPERATOR:  I have the Honorable Judge Rudi

12  Brewster.

13         THE COURT:  Yes.

14         OPERATOR:  Okay.  And I have Gardner Culpepper?

15         MR. CULPEPPER (Telephonic):  Yes.

16         OPERATOR:  Frederick Lorig?

17         MR. LORIG (Telephonic):  Yes.

18         OPERATOR:  David Dolkas?

19         MR. DOLKAS (Telephonic):  Yes.

20         OPERATOR:  And Jim Batchelder?

21         MR. BATCHELDER (Telephonic):  Yes.

22         OPERATOR:  Okay.  Should assistance be required

23  during the meeting, the host may press pound then zero to

24  reach a menu of options, including specialist assistance,

25  and should anyone require All Call specialist assistance

                                                    -1-

1 or --

2          MR. LORIG:  If I can interrupt, there's another

3 attorney, Michael Neil, who should be participating.

4          OPERATOR:  I don't have him.  Do you have his

5 number?

6          MR. LORIG:  I do not.  Mr. Casebeer?

7          MR. CASEBEER:  No, I don't.  I'm sorry.  He was

8 not on our list.

9          THE COURT:  Mr. Neil represents Nokia?

10          MR. LORIG:  That's correct, your Honor.

11          THE COURT:  Is he on the line?

12          OPERATOR:  No, I don't have him, but we were

13 calling out to him.

14          THE COURT:  Okay.  Let's -- the names for Nokia, I

15 got Mr. Culpepper.  I didn't get any other names.

16          MR. LORIG:  I'm sorry, your Honor.  Frederick A.

17 Lorig, L-O-R-I-G.

18          THE COURT:  Wait a second.  I don't have that

19 written down.  Frederick --

20          OPERATOR:  Lorig, L-O-R-I-G.

21          THE COURT:  -- Lorig, L-O-R-I-G, okay.

22          OPERATOR:  And David Dolkas.

23          THE COURT:  David Dolkas.

24          MR. DOLKAS:  Yes.

25          OPERATOR:  D-O-L-K-A-S.

1        THE COURT:  D-O-L-K-A-S?

2        OPERATOR:  Uh-huh, and Jim Batchelder.

3        THE COURT:  Jim Batchelder represents Qualcomm.

4        OPERATOR:  Okay.

5        THE COURT:  Is he present?

6        OPERATOR:  Yes, sir.

7        THE COURT:  Okay.  So for Qualcomm I have Mr.

8 Batchelder and Mr. Casebeer.  Is that all for Qualcomm?

9        MR. DOLKAS:  And Mr. Dolkas.

10        THE COURT: And Mr. Dolkas?

11        MR. DOLKAS:  Yes.  And, your Honor, I filed a

12 notice of appearance this morning to appear in this -- or to

13 be present on the call.

14        THE COURT: Okay.  And so that's three for -- for

15 Qualcomm.  And for Nokia I have Mr. Culpepper present and

16 that's all -- well, no, Mr. Lorig.  Mr. Lorig is present.

17        MR. LORIG:  Yes, your Honor.

18        MR. FLINN (Telephonic):  In addition, your Honor,

19 this is Patrick Flinn.  I'm in the same room with Mr.

20 Culpepper.

21        THE COURT:  Okay.  Good.  That's Mr. Flinn.  But

22 I'm supposed to have Mr. Neil, and he's not here.

23        OPERATOR:  I didn't have him on the list.

24        UNIDENTIFIED SPEAKER:  I have a phone number for

25 Mr. Neil, if that would be helpful.

-3-

1           OPERATOR:  Okay.  What's his phone number?

2           UNIDENTIFIED SPEAKER:  Area code (619) 238-1562.

3           OPERATOR:  Okay.  So I will call out -- I will

4 join everyone to the conference.  Then I will call out to

5 him and join him in.  Is that all right?

6           THE COURT:  Yes.  We'll wait.

7           OPERATOR:  Okay.  Should you need assistance or

8 All Call -- should anyone need off-line assistance or become

9 separated from the conference, you can dial at 1-800-232-

10 1234 and request conference Z as in zebra C as in Charlie M

11 as in Mary 7301.

12          THE COURT:  Operator, can I ask for just

13 information, in the meantime while you do this, get this

14 party aboard, are we going to be disconnected then or what

15 are we doing?

16          OPERATOR:  No.  I'm going to join everyone in on

17 the conference, and then I'm going to go off line and

18 contact Mr. Neil and join him in.

19          THE COURT:  Okay.  So we will all be communicating

20 while you're doing that?

21          OPERATOR:  Exactly.

22          THE COURT:  Okay.  Thank you.

23          OPERATOR:  All right.  Thank you.  Go ahead,

24 please.

25          THE COURT:  Well, first of all, let me -- let me

                                                        -4-

1 announce that if this is the same David Dolkas that I've

2 known for 20 years -- is this Dave Dolkas?

3          MR. DOLKAS:  It is, your Honor.  It is.

4          THE COURT:  Well --

5          MR. DOLKAS:  But up in Palo Alto.

6          THE COURT:  I haven't heard your voice in at least

7 five years, maybe more.

8          MR. DOLKAS:  I think it was at Bill McCurrine's

9 swearing in.

10          THE COURT:  And what firm are you with up there?

11          MR. DOLKAS:  McDermott, Will, and Emery.

12          THE COURT:  And that firm has just been brought

13 into this case?

14          MR. DOLKAS:  Well, we represent Qualcomm in the

15 ITC action against Nokia, and because there's overlap with

16 that case and this case, the guys at Day Casebeer thought it

17 would be a good idea for me to participate.  That's why I

18 filed --

19          THE COURT:  I see.

20          MR. DOLKAS:  -- a notice of appearance.

21          OPERATOR:  Excuse me.  On Mr. Neil's line I'm

22 getting a fax machine.

23          THE COURT:  I've got a -- just a minute.  I've got

24 an attorney directory here.  I'll see if I can give you a

25 number for him.  His telephone number is (619) 238-1712.

1        OPERATOR:  Okay.  Let me try that.  Okay.  Just a

2 moment.  I'm joining Mr. Neil to the conference.

3        MR. NEIL (Telephonic):  Thank you.

4        THE COURT:  All right.  This is Mr. Neil with us

5 now?

6        MR. NEIL:  Hello, Judge.

7        THE COURT:  Good morning.  I guess we're all here

8 now.  You haven't had the benefit of knowing who else is on

9 the phone.  For Qualcomm we have Mr. Batchelder and Mr.

10 Casebeer and Mr. David Dolkas, D-O-L-K-A-S, a new member of

11 that team.

12        MR. NEIL:  All right.  Craig and Jim, good to talk

13 to you.

14        MR. CASEBEER:  Morning.

15        MR. NEIL:  Morning.

16        THE COURT:  And for Nokia we have Mr. Culpepper,

17 Mr. Flinn, Mr. Lorig, Frederick Lorig, and now yourself.

18        MR. NEIL:  Okay.

19        THE COURT:  And that's everybody I believe.

20        MR. CASEBEER:  That's everybody.

21        All right.  So this is a status hearing on this

22 case.  Who's going to status it for me?

23        MR. CASEBEER:  I'll lay it out, Judge.  This is

24 Craig Casebeer on behalf of Qualcomm.  Just to give you a

25 little history, the patent infringement case was filed last

-6-

1 year by Qualcomm against Nokia alleging a number of patents

2 that were infringed by Nokia's products.  Nokia, in

3 response, asserted that it had a defense of estoppel, that

4 Qualcomm should be estopped from asserting its patents

5 against Nokia and that that defense was subject to

6 arbitration under the parties' license agreement pertaining

7 to CDMA products.

8         They also claimed that there was a -- an issue

9 under one of the terms of the contracts, the oppositions

10 clause, which they said would prevent them from challenging

11 the validity of any of the patents in suit in the action

12 before you.

13        And after alleging that, they sought -- in your

14 court then filed a motion to stay pending arbitration.  And

15 after several hearings in the -- in the spring of this year,

16 you ultimately denied that motion to stay, but you granted

17 Nokia's request for a stay pending appeal, on the

18 understanding that the parties were going to seek an

19 expedited appeal in the Federal Circuit.  And, indeed, you

20 put in a declaration yourself to the Federal Circuit, which

21 was most appreciated, that ultimately led the Federal

22 Circuit to expedite the appeal.  Briefs were filed, and

23 argument was heard on the appeal on July 14th in the Federal

24 Circuit.

25        Unfortunately, we do not as yet have a result from

-7-

1 that.  We don't know when that's coming.  We would hope,

2 given the expedited nature of it that it would come soon,

3 but we just don't know at this stage.

4        In the meantime, the stay pending appeal remains

5 in place, and we think, your Honor, that there are some good

6 reasons to look again at whether or not that stay is

7 appropriate, notwithstanding the fact that the Federal

8 Circuit has not yet ruled.  There have been events

9 subsequent to your stay motion that affects that.

10        One of the events is that the oppositions clause

11 that I mentioned earlier issue, which was an arbitrable

12 issue because it arose under the contract, has been entirely

13 resolved by the parties and has been dismissed, and I think

14 it was that oppositions clause, without putting words in

15 your mouth, your Honor, that was an important factor in your

16 decision to grant the stay pending appeal.

17        The other fact that I think is perhaps even more

18 important is that Nokia has recently filed lawsuit against

19 Qualcomm in State Court in Delaware asking for declaratory

20 relief on certain affirmative defenses that once Qualcomm --

21 once Nokia is compelled to answer in this case will

22 certainly be part of that answer, and in Delaware they are

23 seeking a worldwide permanent injunction enjoining Qualcomm

24 from seeking injunctive relief relating to patents that

25 Qualcomm has declared essential to any standard, and this is

-8-

1 what I guess is referred to as a Frand (phonetic) action.

2      So, Judge, by -- as a result of delaying this
3 action, both through the arbitration claim and the stay,
4 Nokia has used that in order to jump into another court in a
5 forum of its own choosing to assert -- to seek a declaratory
6 relief on an expedited basis on affirmative defenses that
7 will ultimately be before you.

8      So we don't think that that really is an
9 appropriate use of your authority or the Court's authority,
10 and it also is not really consistent with what Qualcomm --
11 what Nokia told you in terms of its reasoning for -- for the
12 stay pending appeal, which was that they did not want to
13 engage in activity on the non-arbitrable claims that might
14 not be necessary.

15      I think, unfortunately, they've used this
16 situation in order to -- for tactical gain rather than to
17 save money and effort.  Indeed, if they had filed a -- an
18 affirmative defense in your court on the same issue in the
19 absence of the stay, I think they would be hard pressed now
20 to proceed in Delaware with that same kind of action.

21      So, your Honor, we would -- we would very much
22 like to ask you to -- for those reasons, to lift the stay
23 pending appeal which we're happy to do, if you would like,
24 through a motion that we would file, but we think that there
25 are good grounds to do so at this point.

1        MR. LORIG:  Your Honor, this is Fred Lorig.  May I
2  respond?

3        THE COURT:  Yes.

4        MR. LORIG:  What Mr. Casebeer somehow forgot to
5  tell you is that in June of this year Qualcomm filed an
6  action in the ITC against Nokia.  In that action they are
7  asserting five of the patents that are currently before you.
8  Three of them are in the Nokia case.  Four of them are in
9  the Broadcom case.  Apparently they weren't satisfied with
10 your construction on four of the patents in Broadcom.  So,
11 rather than pursue it in your court, they filed an action in
12 the ITC.

13       A few days ago we filed a motion before your Honor
14 bringing to your attention the fact that there is a
15 mandatory stay in District Courts on any patents that are
16 being pursued in the ITC.  That motion is scheduled to be
17 heard in October and by statute is a mandatory stay.

18       I find it strange that Mr. Casebeer is accusing us
19 of forum shopping when they took the same patents that they
20 asserted before your Honor and are asserting them now before
21 the ITC.

22       With regards to the Delaware action, that action
23 is over a contract on the CDMA, WCDMA telephone patents, not
24 over the GSM patents that are before you, and I -- I just
25 find it very odd that Mr. Casebeer is accusing us of forum

1 shopping when he himself filed these actions in the ITC in

2 June.

3       THE COURT:  Can I ask you, you say the Delaware

4 suit concerns what?

5       MR. LORIG:  The Delaware suit asks the Delaware

6 judge to construe a contract between two Delaware

7 corporations, Nokia, Inc. and Qualcomm, and that contract

8 is -- has been referred to as the Sula (phonetic).  That's a

9 contract whereby Nokia obtained a license for CDMA and WCDMA

10 patents, and in that action in Delaware, we are asking the

11 Court to try to stop Qualcomm from doing what it's been

12 doing, which it has now filed a patent infringement suit

13 against Nokia in England, one in France, one in Germany.

14 Seemingly every week or so we get a new lawsuit filed

15 seeking an injunction worldwide.

16       It's Qualcomm that has taken matters away from

17 your court and is seeking relief in the ITC, England,

18 France, Germany, and elsewhere, leaving us with no choice

19 but to ask a court with jurisdiction over both parties to

20 construe the contract because we believe under the European

21 law that is supposed to control that contract no injunction

22 is possible, and under European law, the contract has to be

23 construed with regards to the remedy.  This isn't a matter

24 of patent law.  It's not a matter of federal law.  It's a

25 matter of contract law.

1         But more importantly, on the stay we believe that
2 it's appropriate to hold your hand because we expect to hear
3 from the Federal Circuit in a matter of weeks.  And, in any
4 event, because they ran off to the ITC on these patents,
5 there's a mandatory stay.  They're not allowed to proceed in
6 both courts, your Honor.

7         MR. CASEBEER:  That's just because -- this is
8 Craig Casebeer.  Mr. Lorig is correct that we filed in the
9 ITC on three patents.  Those are three patents of the 12
10 patents that have been asserted against Nokia in your court,
11 Judge.  And, as I understand the rule, Mr. Lorig is correct,
12 that as to those three, they will be stayed pending the
13 determination in the ITC.  That's not an issue, and that
14 is -- was certainly going to come up in the course of this
15 call.  That had no impact upon the pendency and proceeding
16 on the other patents in your case, and -- as to which
17 there's really no reason to delay any further because of the
18 fact that it's Nokia who has used these delays as a tactical
19 maneuver to get what they believe to be a better forum for
20 their defenses rather than the Southern District of
21 California.

22        MR. LORIG:  Well, again, your Honor, if I can, Mr.
23 Casebeer has omitted again is that four of the patents he
24 has asserted against Nokia in the ITC have been construed by
25 you in the Broadcom litigation.  Nevertheless, Mr. Casebeer

1 and his clients have asserted those patents not in San Diego

2 where he claims this case belongs, but in the ITC.

3        THE COURT:  I'm trying to get these notes written

4 down.  It's coming in pretty fast, guys, kind of like a

5 five-inch hose here.

6        Mr. Lorig, you just said four of the ITC patents

7 that are before the ITC.  How many patents are before the

8 ITC in this new filing?

9        MR. LORIG:  Mr. Casebeer, I believe you have,

10 what, six?

11        MR. CASEBEER:  I think that's right.  Is that

12 right, Mr. Batchelder?

13        MR. BATCHELDER:  Yes.

14        MR. LORIG:  And of the six, five are being

15 asserted by Qualcomm in your court.

16        THE COURT:  I thought you said four of the ITC

17 patents had been construed by this Court.

18        MR. LORIG:  In the Broadcom case, that's correct.

19        THE COURT:  In the Broadcom case?

20        MR. LORIG:  That's correct.  There's been no claim

21 construction in our case, your Honor.

22        THE COURT:  Uh-huh.

23        MR. LORIG:  And it just strikes me as odd that Mr.

24 Casebeer keeps beating the same drum about how this case

25 belongs in San Diego, but he has filed an action in the ITC

-13-

1 on five of the same patents before you, four of which you've
2 construed.

3          THE COURT:   Now, you -- somebody, I think Mr.
4 Casebeer -- somebody said that, refreshing my recollection,
5 if -- if suit is in this court and it gets filed in the ITC,
6 the ITC takes precedence, does it not?

7          MR. CASEBEER:   Yes, that's right.   That's my
8 understanding, and those -- those patents, those particular
9 patents, three of them against Nokia would be stayed pending
10 the ITC determination, and it's very common, Judge, to have
11 parallel proceedings in District Court and the ITC.   It's a
12 different form of action.   It's an in rem action before the
13 ITC, and there's -- it's not a forum shopping exercise at
14 all, as Mr. -- as Mr. Lorig suggests.

15         THE COURT:   Well, as I understand it, the -- the
16 ITC only can give injunctive relief, and I would expect that
17 the purpose for suing the ITC would be to stop importation
18 of allegedly infringing products.

19         MR. LORIG:   That's correct.

20         THE COURT:   So is that what you're trying to stop?
21 You're trying to stop Nokia from importing products which
22 you claim infringe six of your patents?

23         MR. CASEBEER:   That's right, Judge.

24         MR. LORIG:   And that's what they're also trying to
25 do in your court, your Honor.   They're seeking an

1 injunction.

2          THE COURT:  Yeah.

3          MR. LORIG:  And all I'm trying to say is that it

4 seems to me, rightly or wrongly, since the law gives you the

5 discretion to stay the entire case when one of the parties

6 runs off to the ITC on the same patents, your -- the stay

7 does not have to be limited merely to the patents that are

8 at issue both in your court and in the ITC, but under the

9 law you'll find that you have the discretion to stay the

10 entire case when someone isn't happy with your jurisdiction

11 and runs off to the ITC as well.

12          THE COURT:  Well, I can see that.  Rather than

13 splitting the case up and trying a piece of it here and a

14 piece of it there, I can see where I'd have discretion to

15 just back off and see what happens there first and see what

16 luck we have.

17          MR. LORIG:  Yes, your Honor.

18          THE COURT:  Well, let me ask you this.  First of

19 all, I'm reluctant to lift the stay on this case, with the

20 Federal Circuit having already heard the case and they're in

21 the deliberative process now and it's August 15 or so.

22 They've just had it a month to deliberate on it.  I would

23 expect that we should hear from them fairly soon.

24          MR. LORIG:  We believe so, your Honor.

25          THE COURT:  So I really -- just for starters, I

-15-

1 would be reluctant to change our course that we're on right

2 now, which was -- is to stay this case until we hear from

3 the Federal Circuit on the issue about arbitrability of this

4 case.  Now --

5        MR. CASEBEER:  The problem is, Judge -- this is

6 Craig Casebeer again -- Nokia is attempting to get

7 declaratory relief on -- on affirmative defenses in an

8 expedite basis in another court that will have an impact

9 upon the cases before you.

10        THE COURT:  Okay.

11        MR. CASEBEER:  The way that they did that was to

12 utilize the stay pending appeal in order to jump to that

13 court because there was nothing that could be done and they

14 didn't have to assert their defenses in your court.

15        THE COURT:  Well, I understand that.  I was going

16 to get to that next.  If your view of what's happened is the

17 proper view, as I understand it, they, in their DRA action,

18 are asserting as the Plaintiff their affirmative defenses to

19 your infringement action that's stayed in this court.  Those

20 would be affirmative defenses which will be pled in this

21 court eventually I'm sure.  But, remember, we got stayed I

22 think before we got to issue.  We didn't even get to issue

23 in this case.

24        MR. CASEBEER:  That's exactly right.  We have no

25 answer from Nokia.

-16-

1        THE COURT:  That's right.  So I would expect

2 that -- that if the Delaware case had not been filed and if

3 the Federal Circuit had said that it's not arbitrable and

4 you can go ahead and continue with this case, the first

5 thing that would happen would be the case would come to

6 issue, and Nokia would file such appearance as they felt was

7 appropriate to respond to the complaint, and that probably

8 would include the separate affirmative defenses which are

9 the subject of their DRA complaint in Delaware.

10        MR. LORIG:  Your Honor, this is Fred Lorig --

11        THE COURT:  So far is that basically --

12        MR. CASEBEER:  That's my understanding.

13        MR. LORIG:  Well, that's what I was trying to say,

14 your Honor, and that's --

15        THE COURT:  What?

16        MR. LORIG:  Issues before the Delaware Court go

17 far beyond affirmative defenses in your court.  The -- the

18 action was filed in Delaware in response to patent

19 infringement suits filed in England, France, and Germany

20 which inappropriately sought injunctive relief which we

21 don't believe is possible under the European contracts.

22        The action was filed in Delaware because Qualcomm

23 is a Delaware corporation, and there many many issues in the

24 complaint that are not merely affirmative defenses that

25 would be pled in your court.

1        It may be of some assistance, if your Honor deems
2 it appropriate, for us to provide you with a courtesy copy
3 of the Delaware complaint, and you can read it for yourself.
4 Would that be helpful?

5        THE COURT:  Well, I'm sure it wouldn't be
6 unhelpful, yeah.  But --

7        MR. LORIG:  We'll provide that to you.

8        THE COURT:  But, in the meantime, let me get to
9 the point I want to make about Delaware.  If Qualcomm's view
10 of the Delaware action is the -- the correct view, that this
11 is an action that shouldn't be filed in the face of the stay
12 in this Court, I would think that a motion could be brought
13 before the Delaware Court by Qualcomm asking the Delaware
14 Court to stay their case on the grounds of another action
15 pending and to let it be resolved here, which would be
16 resolved under the games rules that we're operating under
17 this court right now.

18        MR. LORIG:  The Delaware Chancery -- vice
19 chancellor suggested to Mr. Casebeer just a few days
20 ago that he bring this up by a motion to dismiss.  That
21 motion to dismiss is supposed to be filed within two weeks
22 in Delaware, and we're supposed to respond in two weeks,
23 your Honor.

24        MR. CASEBEER:  And, indeed, that's exactly what
25 we're going to do, Judge.

-18-

1        THE COURT:  Okay.  Well, I'm -- I'm pleased to

2 hear that, because that would be the first -- I would think

3 that would be the first port of call.  I suppose it's

4 possible to ask this Court to enjoin the party.  We don't

5 enjoin the Court, but to ask for an injunction against the

6 party from proceeding in the Delaware Court, but I'd be

7 extremely reluctant to do that, and I would think that you

8 do have a remedy.  If -- if your view of what happened is

9 correct, I should think that your first port of call should

10 be the Delaware Court.

11        MR. CASEBEER:  We will pursue that remedy -- this

12 is Craig Casebeer, your Honor -- and make that the first

13 order of priority.  We also, however, would think an

14 appropriate remedy would be in light of all of this for you

15 to lift the stay to prevent it from continuing to be used

16 for tactical purposes, which I think this filing

17 demonstrates.

18        THE COURT:  Well, I don't -- I don't feel moved to

19 do that.  I feel that you -- the only thing they've done --

20 the only thing they've done in your view to get around the

21 stay is to file the Delaware action, and I don't feel

22 that -- and since you have a remedy with that, you can go

23 straight to Delaware, and if they agree with your view of

24 what's happened, they will -- they will take appropriate

25 action there, and that solves the problem, and it doesn't

1 require me to unstay anything.

2       MR. LORIG:  Your Honor, may I ask -- this is Fred
3 Lorig again.

4       THE COURT:  Yes.

5       MR. LORIG:  You know, one of the things that
6 strikes me is if Mr. Casebeer is trying to get something
7 stayed, perhaps he will agree that Qualcomm will not file
8 any further actions in the ITC or in Germany or in France or
9 other countries during the stay.

10      THE COURT:  Well, before I would -- if you're
11 asking for me to take some kind of mandatory order or
12 position on that, I -- I would have to have -- I think if I
13 had to do that, I'd have to have briefing and -- and careful
14 thought on that.  I just wouldn't -- I would not react with
15 that unless I knew exactly what's going on.

16      MR. CASEBEER:  Nor is there any basis for such a
17 request, Judge.

18      THE COURT:  However, there are some questions I do
19 have.  The -- these actions -- first of all, the action in
20 the ITC, that's an action in which Qualcomm has sued, as I
21 understand it, on six -- claiming that six of their parents
22 are infringed and three of the six that you're suing on in
23 the ITC, three of them are in this court.

24      MR. LORIG:  That's correct, your Honor.

25      MR. CASEBEER:  That's correct.

1          THE COURT:  And that some more of them that are in

2 the ITC are in the other case?

3          MR. LORIG:  There's four in the case that Qualcomm

4 brought against Qualcomm in your court, and you have

5 construed those four patents.

6          THE COURT:  And so but we're only dealing with

7 six.  So there must be some overlap.

8          MR. LORIG:  There is overlap, your Honor.

9          THE COURT:  Okay.  So --

10          MR. CASEBEER:  There's two -- there's two

11 overlaps.

12          THE COURT:  Okay.  So four -- four of the six that

13 are before the ITC are also in this pending case of Qualcomm

14 versus Broadcom?

15          MR. LORIG:  Correct.

16          THE COURT:  So I imagine -- I imagine that the

17 reason for going to the ITC is that in the meantime, while

18 this is cranking forward with perhaps not alacrity in this

19 court is the reason why they went to the ITC to try and get

20 in the meantime enjoin Nokia from importing what Qualcomm

21 views as infringing products.

22          MR. LORIG:  It will take --

23          MR. CASEBEER:  That's exactly right.

24          MR. LORIG:  It will take 14 months --

25          THE COURT:  Well --

-21-

1        MR. LORIG:  -- from June until the ITC.

2        THE COURT:  I know.  That's an amazing calendar,

3 and I'm aware of that.  I don't know how they do it, but at

4 least they don't have damages.  They just have the

5 injunction.  But, still, even that is an amazing calendar.

6 I mean --

7        MR. LORIG:  It is, your Honor.

8        MR. CASEBEER:  It's a rapid calendar, that's

9 right.

10       MR. LORIG:  And our perception was that Qualcomm

11 was not satisfied with the pace in your court, so as a

12 little bit of self-help, ran to the ITC.

13       MR. CASEBEER:  Well, there was no pace because of

14 the stay.  So nothing was happening in your court,

15 unfortunately, Judge.  And, as a result, we were required to

16 seek help elsewhere, and the ITC was the logical place to do

17 it.  I'm not saying we wouldn't have brought the ITC action

18 in any case because, as I say, it's a different nature of

19 proceeding, but certainly because of the delay it made good

20 sense to pursue the ITC action.

21       THE COURT:  Well, as I understand it, the ITC, it

22 is different, but it isn't in some respects.  In other

23 words, if there are decisions made on the merits of these

24 claims on these patents, wouldn't that be res judicata in my

25 court?

-22-

1          MR. LORIG:  No, your Honor, because it's not an

2 Article I court.

3          THE COURT:  You mean it's not an Article III

4 court?

5          MR. LORIG:  Article III court, excuse me.

6          THE COURT:  I see.

7          MR. LORIG:  It's not claim preclusion or issue

8 preclusion.

9          THE COURT:  I see.  Okay.  Well, I -- I gave them

10 more horsepower than they have I guess.  Well, I appreciate

11 getting all this.  I don't know exactly what to do except I

12 feel, taking them one step at a time, I really am very

13 reluctant to change our course of action in this case here.

14 We've got a stay in place.  It's working.  We asked the

15 Circuit to give us prompt attention.  They've done that.

16 They've heard the case.  They're working on it.  For us to

17 dissolve the stay now, I just feel that's precipitous, and

18 I'm reluctant to do that.

19          However, to the extent that the Nokia case in the

20 District Court in Delaware is another Article III forum on

21 the same issues, to the extent that it's felt by that Court

22 that that's an end run around the stay in this court, they

23 can say that and they can do what's appropriate there.

24          Now, Mr. Lorig points out that there are many

25 other issues before that Court which may be brand new and

                                                        -23-

1 not duplicative, not an end run at all.  There may be new
2 claims and causes of action that are raised there.  And if
3 that's the case, I -- it well may be that Delaware would
4 say, "Well, look, we're going to cut this case up a little
5 bit.  We're going to drop some of it out because it's before
6 San Diego.  So we'll kick you out on those, but as to these
7 others you're raising new causes of action between these
8 parties which are not before the Court in San Diego."  And
9 if they're not arbitrable -- I mean, are they -- are
10 those -- is this contract that you're talking about in
11 Delaware, Mr. Lorig, is this the contract for the CDMA
12 technology between Qualcomm and Nokia?

13        MR. LORIG:  No, your Honor.  Excuse me.  The
14 contract is a contract in Europe.  It's between Qualcomm and
15 an organization called ETSE (phonetic), and Nokia is a
16 member of ETSE, and under that organization's contract with
17 Qualcomm, they have obtained a license -- a fair reasonable
18 non-discriminatory basis which Qualcomm and Nokia have a
19 dispute how that's to be defined, including Nokia's belief
20 that no injunction is possible, that if you disagree on the
21 terms of that fair and reasonable license, the Court -- you
22 go to the Court to set that royalty.

23        So it's a French contract to be determined under
24 French law, and under the rules, you go to the national
25 courts to try to get it resolved.  And since Qualcomm was a

-24-

1 Delaware corporation, Nokia went to Delaware to get it
2 resolved.

3      MR. CASEBEER:   Judge Brewster, this is Craig
4 Casebeer.   I'm not sure what Mr. Lorig means when he says
5 there's a lot of other issues in the case.   Looking at the
6 prayer for relief in the Delaware action, it's asking that
7 Qualcomm be barred from seeking injunctive relief and on a
8 worldwide basis declare that it's committed to license its
9 essential patents on Frand terms, on fair and reasonable
10 terms, and order that a Frand royalty must be based on a
11 certain number of factors.   So it's directly addressed at
12 these patents, and it is an affirmative to the extent of no
13 injunctive relief in that it must be licensed on Frand
14 terms.   As far as I can see, that's the sum and substance of
15 this complaint.

16      MR. LORIG:   Your Honor, again, this is Fred Lorig.
17 I'd be happy to provide your Honor with a courtesy copy of
18 the Delaware complaint, and Mr. Casebeer is within two weeks
19 going to be filing a motion with the Delaware Court, and,
20 you know, we, of course, will provide the Court with
21 notification of what the Delaware Court decides.

22      THE COURT:   Yeah, I -- I'm not sure that the
23 Delaware Court needs my looking at that complaint, and I --
24 and it doesn't sound like it really is any of my business at
25 the moment.   It's not a contract that's in this Court as far

-25-

1 as I can recognize.  I don't recognize any European

2 contract.

3       It sounds a little like another case I have

4 involving what's called an MPEG L.A. contract for video

5 patents where they all -- all the parties pool their patents

6 and then they are automatically licensed, and they pay

7 royalty for their products into this pool and they

8 distribute the royalties among the parties to the pool.

9 It's a device to basically mutually cross-license everything

10 so everybody gets fair royalties without the necessity of

11 litigating the heck out of everybody's patents.

12       MR. LORIG:  You're correct, your Honor, that

13 that's one standard-setting organization, and ETSE is

14 another one.

15       THE COURT:  Yeah.  It sounded familiar.  It

16 sounded familiar to me.  And so that doesn't sound like

17 anything at all that's involved in this court, and so I --

18 it may be that Qualcomm will not be successful in getting

19 that case thrown out of Delaware.  It doesn't sound like

20 anything I've seen in -- in my court.  So I don't think we

21 can say it's another action pending here, not those -- not

22 that contract.

23       So it sounds like it's -- there's more to this

24 Delaware thing than I can handle from here, especially if

25 there's going to be a motion filed there.  I would defer and

1 let that go forward and let that Court do what it sees based

2 upon the motion papers.

3        MR. CASEBEER:  That's fine, Judge.  We will

4 certainly pursue that route.

5        THE COURT:  Yeah.

6        MR. CASEBEER:  I'd just note that at some point

7 you will see these affirmative defenses based upon the same

8 grounds as are alleged in the Delaware action.

9        THE COURT:  Well, if that happens, it will happen.

10 If Delaware supports your position, they'll say "No, no,

11 finish that up in San Diego."  Then you'll come back here,

12 and this case stay won't last forever.  I mean, we're going

13 to hear from the Court of Appeals very soon.  Of course,

14 their ruling may be that it is arbitrable, and that will,

15 once again, put a stay on this action if that happens.

16        MR. CASEBEER:  Well, Judge, you, of course, found

17 that even if the claims were arbitrable, the Court should --

18 the Court would not stay the non-arbitrable claims, and that

19 also is before the Court of Appeals, and we're pretty

20 comfortable that whatever they do on arbitrability, they

21 will affirm your position that the non-arbitrable claims

22 should not be stayed.

23        THE COURT:  Well, at any rate --

24        MR. CASEBEER:  That is the patent infringement

25 claims.

-27-

1          THE COURT:  -- let's -- let's let this thing go

2  in -- it sounds like the Delaware Court might be resolving a

3  lot of these European lawsuit issues which I guess, if I

4  understand what you're telling me, are really contract

5  cases.

6          MR. LORIG:  Yes, your Honor, we believe this is a

7  contract issue, and that's why we're asking the contract.

8          THE COURT:  And so if the Delaware Court is going

9  to determine what that contract means, it sounds like

10 there's a potential for the Delaware Court to resolve all of

11 those other European lawsuits.

12         MR. LORIG:  We hope so, your Honor.

13         THE COURT:  Well --

14         MR. CASEBEER:  I don't think that will be the

15 case, Judge, but I -- I've got to say I'm not as familiar

16 with the European Union cases.

17         THE COURT:  Yeah.  Well, God knows you're more

18 familiar with it than I.  I just heard about it a few

19 minutes ago.

20         Well, let's -- if all of this is leading to a

21 decision by the Court, let me say this.  I would -- I would

22 not want to lift the stay -- I will not lift the stay on

23 this Qualcomm versus Nokia case that's before this Court,

24 the one that I stayed pending the review by the Circuit of

25 the arbitrable issue.  I would -- I will not lift that stay.

-28-

1 I want to hear what the Circuit says.  And we'll go from

2 there.

3        Now, it may be when we get  that ruling from the

4 Circuit, I suggest what we should do right away is have

5 another telephone status conference to see what do we do

6 now.

7        MR. CASEBEER:  That's fine, Judge.

8        MR. LORIG:  Agreed, your Honor.

9        THE COURT:  So, now, having said that and being

10 told that Qualcomm is going to follow what they feel are

11 their rights in Delaware with the Delaware Court, there's

12 nothing for me to do about that.  There's nothing for me to

13 do about the European cases.  That's not before the Court.

14 Looks to me like the only question for me is whether I

15 should prematurely dissolve that stay pending appeal or

16 leave it the way it is, and that's the only decision I need

17 to make right now, isn't it?

18        MR. LORIG:  Yes, your Honor.  The motion to stay

19 because of the ITC actions isn't scheduled to be heard by

20 you until October.

21        THE COURT:  Right.  So let me resolve that one

22 then.  I will deny the motion to lift the stay of the

23 Qualcomm versus Nokia case which is stayed pending appeal of

24 the interlocutory issue before the Federal Circuit, and when

25 we get the ruling, then I will -- we'll contact all parties,

1 and we'll have another status hearing and see where we go

2 now.

3          MR. LORIG:  Very well, your Honor.

4          THE COURT:  All right?

5          MR. CASEBEER:  Fine, Judge.

6          THE COURT:  All right.  Well, is there anything

7 else we can do this morning?

8          MR. LORIG:  No, your Honor.  I don't think so.

9          MR. CASEBEER:  I don't think so.

10          THE COURT:  All right.  Have a nice day.

11          ALL:  Thank you.

12      (Proceedings recessed.)

13

14

15

16

17

18

19

20

21

22

23

24

25

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____        _____
Transcriber                    Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

_____

L.L. Francisco, President

Echo Reporting, Inc.

-31-

□